## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | Case No. 21-10252-tmd |
| WC 3RD AND TRINITY, LP, | § | |
| | § | Chapter 11 |
| Debtor. | § | |

## CONTRACT FOR SALE OF NON-RESIDENTIAL REAL PROPERTY

WHEREAS, Randolph N. Osherow (the "Trustee") is the duly appointed and serving chapter 7 trustee for the bankruptcy estate (the "Bankruptcy Estate") in the above styled and numbered bankruptcy case;

WHEREAS, all rights and interests of WC 3rd and Trinity, LP (the "Debtor") with respect to that certain piece of real property commonly known as 309 E. 3rd St., Austin, Texas 78701 (the "Real Property") are included in the Bankruptcy Estate;

WHEREAS, the Trustee has sought from the Bankruptcy Court authority to sell as-is where-is the Real Property [see Motion to Sell, Dkt. No. 167];

WHEREAS, DHA Capital LLC ("Buyer") has reviewed the Motion to Sell and is aware of, among other things, the fact that there is a third-party that asserts a right of first refusal with respect to sale of the Real Property;

WHEREAS, Buyer has done its own due diligence with respect to the Real Property, including ownership thereof;

WHEREAS, Buyer acknowledges that the Trustee intends to seek to sell the Real Property to the highest and best bidder subject to approval by the Bankruptcy Court;

WHEREAS, Buyer wishes to purchase from the Bankruptcy Estate its rights (as-is, where-is) in the Real Property;

NOW, THEREFORE, BIDDER offers to purchase the Bankruptcy Estate's interests in the Real Property.

### ARTICLE 1
### PURCHASE PRICE AND EARNEST MONEY

Section 1.1        Agreement to Sell and Purchase.

Trustee shall sell to Buyer, and Buyer shall purchase from Trustee, the Real Property, subject to the terms and conditions of this Agreement.

Section 1.2        Purchase Price.

The purchase price ("Purchase Price") of the Real Property is $22,100,000, payable in cash or other immediately available federal funds at Closing, subject to adjustment as described in paragraph 5.1 below

Section 1.3        Deposit.

**ARTICLE 2 WITHIN THREE (3) BUSINESS DAYS OF AN ORDER OF THE BANKRUPTCY COURT RATIFYING THE SALE OF THE PROPERTY TO BUYER, BUYER SHALL DEPOSIT THE AMOUNT OF $50,000.00 IN IMMEDIATELY AVAILABLE FEDERAL FUNDS WITH TRUSTEE (THE "FIRST DEPOSIT").  WITHIN THREE BUSINESS DAYS OF NOTICE FROM TRUSTEE THAT THE RIGHT OF FIRST REFUSAL HAS EXPIRED, BUYER SHALL DEPOSIT WITH TRUSTEE AN ADDITIONAL TWO HUNDRED THOUSAND DOLLARS ($200,000) ("SECOND DEPOSIT", AND TOGETHER WITH THE FIRST DEPOSIT, THE "DEPOSIT").  THE DEPOSIT WILL BE APPLIED IN ITS ENTIRETY TO THE PURCHASE PRICE AT CLOSING PURSUANT TO THE SALE ORDER.  IF THIS AGREEMENT DOES NOT CLOSE, THE DEPOSIT WILL BE DISBURSED IN ACCORDANCE WITH THE APPLICABLE ORDER(S) OF THE BANKRUPTCY COURT.**
**TITLE AND OTHER INFORMATION**

Section 2.1        Title.

Buyer acknowledges that Trustee has provided certain information, to the extent within the actual possession of Trustee, regarding the Real Property to Buyer (collectively, the "Property Information"), and Buyer agrees that the Trustee has not made and does not make any warranty or representation regarding the sufficiency, truth, accuracy, or completeness of the Property Information or the source(s) thereof, and that Trustee has not undertaken any independent investigation as to the sufficiency, truth, accuracy, or completeness of the Property Information and is providing the same solely as an accommodation to Buyer.  All Property Information provided by Trustee or its agents and representatives to Buyer with respect to the Real Property shall be treated as confidential information by Buyer and shall not be disclosed to any third (3rd) party except as expressly provided herein.  Buyer was provided a commitment for the issuance of an owner's policy of title insurance for the Real Property dated June 9, 2022, GF No. 202202773 (the "Title Commitment").  In the event any new matters appear in an updated or revised Title Commitment that did not appear in the version previously delivered to Buyer, except to the extent any of the same are created by, through or under Buyer or with Buyer's written consent (the "New Encumbrances"), Buyer shall have the right to terminate this Agreement and receive a refund of the Deposit.

**ARTICLE 3**
**TRUSTEE'S REPRESENTATIONS, WARRANTIES, AND COVENANTS**

Section 3.1        Trustee's Representations and Warranties.

Trustee represents and warrants to Buyer as follows, which representations and warranties are also deemed to be made on and as of the Closing Date:

(a)        Trustee, acting by and through the authority of the Bankruptcy Court, has the authority to execute this Agreement on behalf of the Bankruptcy Estate and, prior to the performance of the respective obligation, will have the authority to perform its obligations under this Agreement.

(b)        Except for the representations and warranties contained in this Agreement, Trustee makes no other express or implied representation or warranty, including, without limitation, representations, or warranties as to the condition of the Real Property, its contents, the income derived or potentially to be derived, or the expenses incurred or potentially to be incurred in connection with the Real Property.  Trustee is not, and will not be, liable or bound in any manner by express or implied warranties, guarantees, statements, promises, representations or information pertaining to the Real Property or this Agreement, made or furnished by any broker, agent, employee, servant, or other

2

person representing or purporting to represent Trustee, unless and to the extent the same is expressly set forth in this Agreement.

Section 3.2     <u>No Survival of Representations and Warranties</u>.

The representations and warranties in **Section 3.1** will be deemed merged into the Deed upon Closing.

## ARTICLE 4
## BUYER'S REPRESENTATIONS, WARRANTIES, AND COVENANTS

Section 4.1     <u>Buyer's Representations and Warranties</u>.

Buyer represents and warrants to Trustee, which representations and warranties are also deemed to be made on and as of the Closing Date:

(a)     Buyer has the authority to execute this Agreement and to perform its obligations under this Agreement.  If an entity, the person executing this Agreement on behalf of Buyer is duly authorized to do so.

(b)     There are no attachments, executions, assignments for the benefit of creditors, or voluntary or involuntary proceedings in bankruptcy or under other debtor relief laws contemplated by, pending, or threatened against Buyer.

(c)     Buyer is a sophisticated user and developer of real property and is acquiring the Real Property for development purposes.  Accordingly, Trustee is and shall be under no obligation to make disclosures under applicable law regarding the Real Property, but rather, Buyer in making this Agreement has relied exclusively on its own consultants, advisors, counsel, employees, agents, principals, and/or studies, investigations, and/or inspections with respect to the Real Property, its condition, value, and potential.

## ARTICLE 5
## CLOSING AND PRORATIONS

Section 5.1     <u>Closing Date</u>.

Section 5.2     <u>The **Closing** of this Agreement will take place thirty (30) business days following the later to occur of: a) the entry of the Sale Order by the Bankruptcy Court authorizing the Trustee to enter into this Agreement and proceed with Closing and (b) the expiration of any right of first refusal to which this Agreement may be subject; (the **Closing Date**) or at such other later time as ordered by the Bankruptcy Court.  Notwithstanding the above, Trustee shall have the right, at its sole option, by providing notice to Buyer upon award of the Contract to the Buyer, to accelerate the Closing Date to the date that is seven (7) business days after the later to occur of the events described in clauses (a) and (b) above, in which event Buyer shall receive a credit of $2,000,000 against the Purchase Price at Closing.Closing Matters</u>.

(a)     On the date of Closing, Trustee shall deliver into escrow with Closing Agent, for delivery to Buyer upon Closing:

(i)     a Special Warranty Deed (the **Deed**), duly executed and acknowledged by Trustee, substantially in the form attached to this Agreement as **<u>Exhibit B</u>** and limited as contemplated therein;

(ii)     2 counterparts of a General Assignment, with respect to the Leases, Permits, and Intangibles (the **Assignment**), duly executed by Trustee, substantially in the form attached to this Agreement as **<u>Exhibit C</u>**.

(iii)     any other document reasonably required by the Bankruptcy Court to consummate the transactions contemplated herein; and

3

EXH 1

(iv)    possession of the Real Property, subject to the Permitted Exceptions and any other matters authorized herein.

(b)    At the Closing, Buyer shall deliver into escrow with Closing Agent, for delivery to Trustee upon Closing:

(i)    by wire transfer or other immediately available federal funds, the cash portion of the Purchase Price;

(ii)    2 counterparts of the Assignment, duly executed by Buyer; and

(iii)    any other document reasonably required by the Bankruptcy Court or the Trustee to consummate the transactions contemplated herein.

Section 5.3    <u>Prorations.</u>

(a)    At Closing, *ad valorem* taxes and assessments or other income and expenses attributable to the Real Property will be prorated as of the Closing Date.  Trustee shall pay from the proceeds of this Agreement at Closing the claim of Travis County, Texas, for unpaid pre-petition *ad valorem* taxes.

(b)    The obligations of the Trustee and Buyer under this **Section 5.3** survive the Closing.

Section 5.4    <u>Closing Costs.</u>

Any and all costs, fees, and expenses attributable to the Closing hereunder incurred by Buyer shall be paid by Buyer; provided, however, that Trustee shall pay the cost of the Buyer's title insurance policy (but excluding the cost of any lender endorsement).

## ARTICLE 6
## TERMINATION AND REMEDIES

Section 6.1    <u>Termination Prior to Closing.</u>

Buyer expressly acknowledges and agrees that on the Effective Date of this Agreement, Buyer shall have no right whatsoever to terminate this Agreement, except only in the event that Buyer is not deemed to be the successful bidder or a back-up bidder upon entry of the Sale Order.

Notwithstanding the above, Buyer may terminate this Agreement and receive back the full amount of the Deposit in the event that Trustee is unable to close title pursuant to the terms of this Agreement within one hundred twenty (120) days following the Effective Date.

In the event of any termination of this Agreement, this Agreement shall forthwith become wholly void and of no further force and effect, and there shall be no liability on the part of Buyer or or the Trustee.  Buyer waives the right to claim, seek, or recover special, consequential, punitive, or any other damages other than actual damages in connection with this transaction and this Agreement.  The provisions of this **Section 6.1** survive the Closing or any termination of this Agreement.

Section 6.2    <u>Trustee's Remedies.</u>

If Buyer is selected to be the successful bidder or back-up bidder pursuant to the Sale Order and fails to close on the Closing Date for any reason other than Trustee's failure to deliver the items required by **Section 5.2(a)**, then Trustee may, as its sole and exclusive remedy, terminate this Agreement by giving notice to Buyer of such termination, and upon such termination the Deposit shall be deemed forfeited and released to Bankruptcy Estate.

EXH 1

**ARTICLE 7**
**MISCELLANEOUS**

Section 7.1     Notices.

All notices, requests, approvals, consents, and other communications required or permitted under this Agreement (**Notices**) must be in writing and are effective:

(a)     on the business day sent if (i) sent by e-mail prior to 6:00 p.m. prevailing Central time, and (ii) (A) the sender receives evidence of sending, via copy in its "sent" file or other similar electronic storage, and (B) a confirming copy of such Notice is deposited no later than the same business day with an overnight courier in the manner specified in clause (b) below;

(b)     on the date of deposit, if deposited on a business day, with a nationally recognized overnight courier service for prepaid delivery on the next business day; or

(c)     3 business days after being deposited on a business day in the United States mail, certified, return receipt requested, postage prepaid.

in each instance addressed to Buyer or Trustee, as the case may be, at the following addresses:

Trustee:          Randolph N. Osherow, Chapter 7 Trustee
                  342 West Woodlawn, Suite 100
                  San Antonio, Texas 78212
                  Tel:          (210) 738-3001
                  Email:        rosherow@hotmail.com

                  With a copy to:

                  Brian Cumings
                  Graves Dougherty Hearon & Moody, PC
                  401 Congress Ave., Suite 2700
                  Austin, Texas 78701
                  Tel:          (512) 480.5620
                  Email:        bcumings@gdhm.com

Buyer:            DHA Capital LLC_____
                  8700 Calera Drive_____
                  Austin TX  78735_____
                  Attention:    Daniel Hollander_____
                  Tel:          646-528-8668_____
                  Email:        dan@dhacap.com_____

                  With a copy to:

                  Winstead PC
                  401 Congress Ave., Suite 2100
                  Austin, Texas 78701
                  Attention:    Kristi Stotts
                  Tel:          512-370-2877
                  Email:        kstotts@winstead.com

Either party may change its addresses or numbers for notice hereunder, by providing the other party with at least 7 days' prior notice of such change in accordance with this provision.  Legal counsel of Buyer or Trustee, as applicable, may deliver Notice on behalf of the respective party.

EXH 1

Section 7.2        Assignment.

This Agreement may not be assigned by Buyer without the prior consent of Trustee except to an entity controlled by, or under common control with Buyer or Buyer's sole principal.

Section 7.3        Disclaimers, Waivers, and Releases.

Buyer acknowledges and agrees that:

(a) BUYER IS PURCHASING THE REAL PROPERTY AS IS, WHERE IS, AND WITH ALL FAULTS, AND BUYER RELEASES TRUSTEE AND THE BANKRUPTCY ESTATE AND ALL OF TRUSTEE'S AFFILIATES AND THEIR EMPLOYEES, OFFICERS, DIRECTORS, REPRESENTATIVES, AND AGENTS FOR ANY COST, LOSS, LIABILITY, DAMAGE, EXPENSE, DEMAND, ACTION, OR CAUSE OF ACTION ARISING FROM OR RELATED TO ANY CONSTRUCTION OR DESIGN DEFECTS, ERRORS, OMISSIONS, OR OTHER CONDITIONS AFFECTING THE REAL PROPERTY, KNOWN OR UNKNOWN. THIS RELEASE WILL BE GIVEN FULL FORCE AND EFFECT ACCORDING TO EACH OF ITS EXPRESS TERMS AND PROVISIONS, INCLUDING, WITHOUT LIMITATION, THOSE RELATING TO UNKNOWN CLAIMS, DAMAGES, AND CAUSES OF ACTION. THIS COVENANT RELEASING TRUSTEE AND ALL TRUSTEE AFFILIATES IS A COVENANT RUNNING WITH THE REAL PROPERTY AND IS BINDING UPON BUYER, ITS SUCCESSORS AND ASSIGNS.

(b) TRUSTEE SPECIFICALLY DISCLAIMS, AND BUYER EXPRESSLY WAIVES, ANY WARRANTY, GUARANTY, OR REPRESENTATION, ORAL OR WRITTEN, PAST, PRESENT, OR FUTURE, OF, AS, TO, OR CONCERNING ALL OR ANY PORTION OF THE REAL PROPERTY OR THE OWNERSHIP OR OPERATION THEREOF, INCLUDING (WITHOUT LIMITATION): (I) THE NATURE AND CONDITION OF THE REAL PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER (INCLUDING BUT NOT LIMITED TO, DRINKING WATER, GROUNDWATER, SURFACE WATER, WETLANDS), SOIL, AND GEOLOGY, AND THE SUITABILITY OF THE REAL PROPERTY AND IMPROVEMENTS FOR ANY AND ALL ACTIVITIES AND USES THAT BUYER MAY ELECT TO CONDUCT THEREON; (II) MATTERS OF TITLE; (III) LEGAL COMPLIANCE OF THE REAL PROPERTY AND IMPROVEMENTS OR THE OPERATION THEREOF, INCLUDING, WITHOUT LIMITATION, THE AMERICANS WITH DISABILITIES ACT AND THE FAIR HOUSING ACT, AS AMENDED FROM TIME TO TIME; (IV) WHETHER THE IMPROVEMENTS ARE BUILT IN A GOOD AND WORKMANLIKE MANNER; (V) ZONING MATTERS; (VI) WARRANTIES (EXPRESS OR IMPLIED) OF CONDITION REGARDING THE FITNESS OF THE REAL PROPERTY AND IMPROVEMENTS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, TENANTABILITY, HABITABILITY, OR SUITABILITY FOR ANY INTENDED USE; AND (VII) ANY ENVIRONMENTAL CONDITIONS (COLLECTIVELY, THE "HAZARDOUS WASTE LAWS"), AND BUYER RELEASES AND WAIVES ANY CLAIMS OR CAUSES OF ACTION AGAINST TRUSTEE, TRUSTEE'S AGENTS, AND TRUSTEE'S AFFILIATES BASED IN WHOLE OR IN PART ON ANY VIOLATION OF OR ARISING OUT OF THE HAZARDOUS WASTE LAWS, OR A VIOLATION OF OR ARISING OUT OF ANY FEDERAL, STATE, OR LOCAL STATUTE, ORDINANCE, RULE, OR REGULATION RELATING TO THE HAZARDOUS WASTE LAWS.

(c) BUYER SHALL PERFORM ALL INVESTIGATIONS OF THE REAL PROPERTY IT DEEMS NECESSARY PRIOR TO CLOSING. BUYER REPRESENTS AND WARRANTS TO TRUSTEE THAT BUYER IS RELYING SOLELY ON BUYER'S INDEPENDENT ANALYSIS AND INVESTIGATION OF THE REAL PROPERTY AND BUYER ASSUMES THE RISK THAT AN ADVERSE CONDITION OF THE REAL PROPERTY MAY NOT HAVE BEEN REVEALED BY ITS OWN DUE DILIGENCE. ANY INFORMATION, PROPERTY INFORMATION, OR REPORTS SUPPLIED OR MADE AVAILABLE BY THE TRUSTEE, WHETHER WRITTEN OR ORAL, OR IN THE FORM OF MAPS, SURVEYS, PLATS, SOIL REPORTS, ENGINEERING STUDIES, ENVIRONMENTAL STUDIES, OPERATION STATEMENTS, RENT ROLLS, OR OTHER INSPECTION REPORTS PERTAINING TO THE REAL PROPERTY (COLLECTIVELY "SELLER INFORMATION") ARE BEING DELIVERED TO BUYER ON AN AS-IS, WHERE IS, AND WITH ALL FAULTS BASIS, SOLELY AS A COURTESY. TRUSTEE MAKES NO, AND BUYER WAIVES ANY, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW AS TO THE ACCURACY, COMPLETENESS, OR ANY OTHER ASPECT OF THE SELLER INFORMATION.

**[Signature page follows.]**

EXH 1

**SIGNED** by Trustee, in its capacity as Chapter 7 Trustee for the Bankruptcy Estate at _____, on the _____ day of _____, 2022, in the physical presence of me, Notary Public, and the following competent witnesses.

**Witnesses:**                                     Trustee
                                                   (in its capacity as Chapter 7 Trustee)


_____     By: _____
                                                        _____
_____     Its: _____
Typed/Printed Name of Witness


_____


_____
Typed/Printed Name of Witness


_____
        Print Name _____
        Notary Public for _____
        Notary or Bar Id. No. _____
        Commission Expires _____

EXH 1

**SIGNED** by _____ at _____, on the _____ day of _____, 2022, in the physical presence of me, Notary Public, and the following competent witnesses.

**Witnesses:**

_____

_____          By: _____

_____                _____
Typed/Printed Name of Witness                     Its: _____


_____

_____
Typed/Printed Name of Witness


_____
            Print Name _____
            Notary Public for _____
            Notary or Bar Id. No. _____
            Commission Expires _____

EXH 1

The undersigned acknowledges receipt of a copy of this Agreement, fully-executed by Buyer and Trustee, and shall comply with the terms of this Agreement that relate to Closing Agent.

_____

By: _____
Name: _____
Title: _____

_____, 2022.

EXH 1