

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: September 20, 2022.**

**TONY M. DAVIS**
**UNITED STATES BANKRUPTCY JUDGE**

---

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| | § | **Case No. 21-10252-tmd** |
| **WC 3RD AND TRINITY, LP,** | § | |
| | § | **Chapter 7** |
| Debtor. | § | |

**ORDER ON SECOND MOTION FOR AUTHORITY (I) TO SELL PROPERTY OF THE ESTATE FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. §§ 363(b) AND 363(f) AND (II) TO AUTHORIZE THE PAYMENT OF CLOSING FEES AND COSTS INCLUDING PAYMENT OF THE REALTOR COMMISSION PURSUANT TO 11 U.S.C. § 328**

On September 15, 2022, the Court held a hearing (the "Hearing") on the *Second Motion for Authority (I) to Sell Property of the Estate Free and Clear of All Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. §§ 363(b) and 363(f) and (II) to Authorize the Payment of Closing Fees and Costs Including Payment of the Realtor's Commission Pursuant to 11 U.S.C. § 328* [Dkt. No. 279] (the "Motion"). Upon consideration of the facts and evidence presented at the Hearing,

and for the reasons stated on the record, the Court, being of the opinion that the Motion is well taken, will hereby approve same as set out herein.

In addition to other findings made on the record at the Hearing, which are incorporated herein, the Court finds as follows:

1.        The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

2.        This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).

3.        The statutory and other legal bases for the relief requested in the Motion are sections 105(a), 363, 503, and 507 of title 11 of the United State Code (the "Bankruptcy Code"), and Rules 2002, 6004, 9007, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The consummation of the sale of the Real Property (as defined herein) by this Order is legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Local Rules, and Randolph N. Osherow as Chapter 7 Trustee (the "Trustee") of WC 3rd and Trinity, LP (the "Debtor"), and DHA Capital, LLC ("DHA Capital" or the "Purchaser") have complied with all of the applicable requirements of such sections and rules.

4.        As evidenced by the certificates of service previously filed with this Court at Dkt. Nos. 279-3 and 282-3, and based on the record at the hearing, due, proper, timely, adequate and sufficient notice of the Motion, the hearing and the Purchase Agreement (as defined herein), has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004 and 9014. The Trustee has complied with all obligations to provide notice of the Motion, the Hearing and the Purchase Agreement. The aforementioned notices are good, sufficient and appropriate under the circumstances, and no other or further notice of the Motion, the hearing or the Purchase Agreement is or shall be required.

2

5. A reasonable opportunity to object or to be heard regarding the relief requested in the Motion was afforded to all interested persons and entities.

6. As evidenced by the certificates of service filed with this Court at Dkt. Nos. 279-3 and 282-3, and based on the record at the hearing, the service and notice was good, sufficient and appropriate under the circumstances and no further notice is or shall be required.

7. Among the assets of the estate are the Debtor's rights and interests in the real property and related entitlements and improvements commonly known as 309 E. 3rd St., Austin, Texas 78701 and all personal property on the premises (the "Real Property").

8. The Real Property is subject to secured claims asserted by KL Horns Up, LLC ("DIP Lender"). The DIP Lender has offered to purchase the Real Property for a purchase price equal to a credit bid of its postpetition loan, pursuant to section 363(k) of the Bankruptcy Code, plus cash in an amount sufficient, with any cash on hand, to satisfy all allowed administrative, priority and general unsecured claims of the Debtor's estate (in the aggregate, the "Lender Offer").

9. All parties authorized to close on the purchase of the Real Property pursuant to the prior order of this Court [Dkt. No. 226] have declined to do so, and their rights to purchase the Real Property under such order have fully and finally terminated.

10. The follow-up sale process undertaken by the Trustee and his professionals with respect to the Real Property has been adequate and appropriate under the particular circumstances, and the purchase offer from DHA Capital in the amount of $20,100,000.00 (the "Purchase Price"), as set forth in that certain *Contract for Sale of Non-Residential Real Property* attached as Exhibit 1 to this Order (the "Purchase Agreement"),[1] represents the highest and best proposal received by the Trustee, thereby maximizing the value of the Real Property for the Debtor's estate, its creditors

---

[1] Capitalized terms used herein but not otherwise defined shall have the meaning ascribed in either the Motion or the Purchase Agreement, as applicable.

and all parties in interest.  Furthermore, the Purchase Price is fair and adequate and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable laws of the United States or any of its jurisdictions or subdivisions.

11.     The sale of the Real Property to the Purchaser for the Purchase Price is in the best interest of the creditors, the estate, and all other parties in interest.

12.     The Purchase Price and the Purchase Agreement were negotiated by the Trustee and the Purchaser without collusion, in good faith, and at arm's length.  Neither the Trustee nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Price to be avoided under section 363(n) of the Bankruptcy Code.  Neither Purchaser, nor any of its affiliates or representatives, is an "insider" of the Debtor as such term is defined in section 101(31) of the Bankruptcy Code.

13.     The Real Property constitutes property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541 of the Bankruptcy Code.  The Trustee has full power and authority to consummate the sale of the Real Property to the Purchaser.

14.     The Purchaser is a good faith purchaser under 11 U.S.C. § 363(m) and is entitled to the protections of 11 U.S.C. § 363(m).

15.     The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full with respect to each lien, claim, and interest in the Real Property; therefore, the Trustee may sell the Real Property free and clear of all liens, claims, and interests.  All parties in interest, including, without limitation, any holders of liens, claims, and/or interests, who did not timely object, or who withdrew their objection, to the sale of the Real Property, the Purchase Agreement or the Motion are deemed to have consented to the relief granted herein pursuant to sections 363(f)(2).

16.     If the Purchaser was not able to purchase the Real Property free and clear of all liens, claims, and interests, the Purchaser would not have agreed to purchase the Real Property, and would not consummate the sale, thus adversely affecting the Debtor's estates, creditors, and other parties in interests.

17.     Further, given that the Purchaser is acquiring the Real Property free and clear of all liens, claims, and encumbrances pursuant to section 363(f), the Purchaser is not and cannot be a successor in interest to the Debtor as to any other creditor or other parties-in-interest as to such liens, claims, and encumbrances.

18.     As of the Closing, pursuant and subject to the terms of the Purchase Agreement and this Order, the transfer of the Real Property will affect a legal, valid, enforceable, and effective transfer of the Real Property and will vest the Purchaser with defensible title and all of the Debtor's rights, title, and interests in the Real Property free and clear of all liens, claims, and interests of any kind or nature whatsoever.

19.     To the extent that the Purchaser does not close the transfer of the Real Property and either 3rd TRI or the DIP Lender closes the transfer of the Real Property as specified herein, the party successfully closing the transfer will be entitled to the same protections and findings as set forth in Paragraphs 10 through 18 above.

20.     Pursuant to the Order [Dkt. No. 165] approving the employment of Trustee's realtor (the "Realtor"), the Realtor is entitled to be paid a commission at closing equal to 3.0% of the Purchase Price by the Trustee from the sale proceeds.

21.     Time is of the essence in consummating the sale of the Real Property pursuant to the Purchase Agreement.  To maximize the value of the Real Property, the sale and assignment of the Real Property occurring within the time constraints set forth in the Purchase Agreement is

critical and essential. Accordingly, cause exists to waive the stays contemplated by Bankruptcy Rules 6004(h).  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

**IT IS, THEREFORE, ORDERED**, that the Motion is Granted as set out herein.

**IT IS, FURTHERMORE, ORDERED** that all objections to the entry of this Order or to the relief granted herein, whether filed, stated on the record before the Court, or otherwise, which have not been withdrawn, waived, or settled, and all reservations of rights included therein, are denied and overruled on the merits except as laid out herein.  All objections to the entry of this Order or to the relief granted herein that were not timely filed are hereby forever barred.

**IT IS, FURTHERMORE, ORDERED** that the Purchase Agreement is hereby approved and the Trustee is authorized and directed to execute same.

**IT IS, FURTHERMORE, ORDERED** that the sale of the Real Property to the Purchaser shall be made as is where is with no representations or warranties of any kind except as set forth in the Purchase Agreement.

**IT IS, FURTHERMORE, ORDERED** that the automatic stay provisions of section 362 of the Bankruptcy Code are terminated and modified solely to the extent necessary to implement the terms and conditions of the Purchase Agreement and the provisions of this Order.

**IT IS, FURTHERMORE, ORDERED** that the secured claim of Lender (as that term is defined in the Motion) shall be satisfied by the Trustee at closing out of the sale proceeds upon the closing of the sale to Purchaser.

**IT IS, FURTHERMORE, ORDERED** that the Trustee is authorized and directed to pay in full at closing, out of the sale proceeds, any delinquent real property ad valorem taxes assessed against the Real Property, and other ordinary and necessary costs of closing, including but not limited to the commission to the paid to the Realtor.

**IT IS, FURTHERMORE, ORDERED** that the Purchaser is hereby granted protections of good faith purchasers under 11 U.S.C. § 363(m) and no person or entity with the exception of the Trustee under the terms of the Purchase Agreement may assert claims against the Purchaser or its related parties in connection with the sale.

**IT IS, FURTHERMORE, ORDERED** that Purchaser shall timely make the deposits (the "Deposits") contemplated in the Purchase Agreement.

**IT IS, FURTHERMORE, ORDERED** that should Purchaser fail to close on the Purchase of the Real Property it shall forfeit the Deposits, as the Trustee's sole remedy under the Purchase Agreement which shall thereby become the sole and exclusive property of the Debtor's estate.

**IT IS, FURTHERMORE, ORDERED** that, notwithstanding anything to the contrary set forth in the Purchase Agreement or this Order, the following procedures (the "ROFR Procedures") shall be implemented with respect to the Right of First Refusal, previously filed with this Court at, *inter alia*, Dkt. No. 167-2 (the "ROFR"), held by 3rd TRI 2020, Ltd. ("3rd TRI"), and the Trustee and the Purchaser may not consummate the transaction contemplated by the Purchase Agreement or the Lender Offer except in accordance with the ROFR Procedures:

    i. The Purchase Agreement and the Lender Offer are each deemed to constitute a "Purchase Offer" as set forth in Paragraph 1 of the ROFR, and notice of such Purchase Offer is deemed to have been given on September 15, 2022 for all purposes under the ROFR;

    ii. Pursuant to Paragraph 3 of the ROFR, 3rd TRI has until 11:59 p.m. (prevailing Central Time) on September 30, 2022 (the "ROFR Deadline") to exercise its right of first refusal to purchase the Real Property on the same terms and conditions as the Purchase Agreement and the Lender Offer;

    iii. If 3rd TRI determines to exercise its right of first refusal with respect to the Purchase Agreement:

        a. on or before the ROFR Deadline, 3rd TRI must file a notice on the Court's docket in the above-captioned bankruptcy case (the "ROFR Notice") reflecting its intent to exercise such right with respect to  the Purchase

Agreement;

    b.  after the filing of the ROFR Notice, 3rd TRI and the Trustee shall proceed to perform the terms of the Purchase Agreement as modified by the ROFR, and close the sale with 3rd TRI in accordance with the terms of the Purchase Agreement, as modified by the ROFR, on or before October 10, 2022. In such case 3rd TRI shall have same rights, benefits, protections, and obligations of this Order as the Purchaser would have had if it had closed the sale pursuant to the terms of this Order; and

    c.  immediately upon the closing of the sale of the Real Property to 3rd Tri, the Purchase Agreement shall terminate as to the Purchaser, the Purchaser shall have no further obligations with respect to the purchase of the Real Property and the Trustee is directed to return any Deposits to the Purchaser within three (3) business days thereafter; *provided*, *however*, if 3rd Tri fails to close on the sale of the Real Property on or before October 10, 2022, then (i) the Trustee shall provide notice to the Purchaser, (ii) the Purchaser shall have seven (7) days from receipt of such notice to close the sale in accordance with the Purchase Agreement; and (iii) the ROFR shall be deemed terminated and extinguished pursuant to this Order in connection with the closing of the sale of the Real Property pursuant to the Purchase Agreement.

  iv.  If 3rd TRI determines to exercise its right of first refusal with respect to the Lender Offer:

    a.  on or before the ROFR Deadline, 3rd TRI must file a ROFR Notice reflecting its intent to exercise such right with respect to the Lender Offer;

    b.  notwithstanding the filing of such ROFR Notice, the Trustee and the Purchaser are authorized to consummate the transaction contemplated by the Purchase Agreement in accordance with the terms of the Purchase Agreement and this Order, and the ROFR shall be deemed terminated and extinguished pursuant to this Order in connection with the closing of the sale of the Real Property pursuant to the Purchase Agreement; and

    c.  in the event that the Purchaser fails to timely close under the Purchase Agreement, if 3rd TRI has timely exercised the ROFR with respect to the Lender Offer then 3rd TRI shall purchase the Real Property from the Trustee, and the Trustee is authorized to sell the Real Property to 3rd TRI, for a cash consideration equal to the Lender Offer, on terms substantially similar to those set forth in the Purchase Agreement provided that any such sale to 3rd TRI must close prior to October 31, 2022. In such case 3rd TRI shall have the same rights, benefits, protections, and obligations of the Order as the Purchaser would have had if had closed the sale pursuant to the terms of this Order.

v.      If no ROFR Notice is filed by the ROFR Deadline, the Trustee and the Purchaser are authorized to consummate the transaction contemplated by the Purchase Agreement in accordance with the terms of the Purchase Agreement and this Order. The ROFR shall be deemed terminated and extinguished pursuant to this Order in connection with the closing of the sale of the Real Property pursuant to the Purchase Agreement.

**IT IS, FURTHERMORE, ORDERED**, that in the event that the sale of the Real Property to the Purchaser or 3ʳᵈ TRI does not close in accordance with the ROFR Procedures, the Trustee is authorized to sell the Real Property to the DIP Lender for the Lender Offer.  Any such sale to the DIP Lender must close on or prior to November 4, 2022.

**IT IS, FURTHERMORE, ORDERED** that the Realtor shall be paid at closing a commission equal 3% of the Purchase Price by the Trustee out of the sale proceeds.

**IT IS, FURTHERMORE, ORDERED** that the 14-day stay requirements of Bankruptcy Rule 6004(h) are hereby **WAIVED**.

**IT IS, FURTHERMORE, ORDERED** that this Order and the Purchase Agreement shall be binding upon all creditors of the Debtor and its estate, and any and all other parties in interest in this bankruptcy case, including, without limitation, any and all holders of liens, claims, and interests (including holders of any rights or claims based on any putative successor or transferee liability) of any kind or nature whatsoever, the Purchaser, the Trustee and any successor Chapter 7 Trustee appointed in this case, and the Debtor. The Purchase Agreement and the sale of the Real Property are not subject to rejection or avoidance (whether through any avoidance, fraudulent transfer, preference or recovery, claim, action or proceeding arising under chapter 5 of the Bankruptcy Code or under any similar state or federal law or any other cause of action) by the Debtor, or any chapter 7 trustee of the Debtor's estate or any other person or entity. The Purchase Agreement, this Order, and the Trustee's obligations therein and herein shall not be altered,

9

impaired, released, enjoined, amended, rejected, discharged or otherwise affected by any subsequent order of this Court without the prior written consent of the Purchaser. To the extent of any conflict between this Order or the Purchase Agreement and any future order of the Court, the terms of this Order and the Purchase Agreement shall control.

**IT IS, FURTHERMORE, ORDERED** that this Court retains jurisdiction before, on, and after the Closing to, among other things, interpret, enforce, and implement the terms and provisions of this Order and the Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith in all respects, including, without limitation, retaining exclusive jurisdiction to: (i) compel delivery of the Real Property or performance of other obligations owed to the Purchaser; (ii) resolve any disputes arising under or related to the Purchase Agreement or claims by or against the Purchaser; (iii) interpret, implement, and enforce the provisions of this Order; and (iv) implement the Purchase Agreement and related sale with respect to the delivery of any waivers, releases, or other related documentation reasonably requested by the Trustee or the Purchaser to evidence the release of any liens, claims, or interests in the Real Property.

**IT IS, FURTHERMORE, ORDERED** that the Trustee and the bankruptcy estate reserve and retains such rights as they may have with respect to the failure of any person authorized to purchase the Real Property pursuant to the prior order of the Court found at Dkt. No. 226.

# # #

*Order Prepared by Counsel for Ch. 7 Trustee*

Brian T. Cumings
SBN 24082882
Graves Dougherty Hearon & Moody, P.C.
401 Congress Ave., Suite 2700
Austin, Texas 78701
512.480.5626

512.536.9926 (Fax)
Email: bcumings@gdhm.com


Approved as to form by:



HOLLAND & KNIGHT LLP

By: */s Anthony F. Pirraglia*
Anthony F. Pirraglia
State Bar No. 2410317
811 Main St., Suite 2500
Houston, Texas 77002
Tel: 713.217.2886
Email: Anthony.pirraglia@hklaw.com

**COUNSEL FOR DHA CAPITAL, LLC**


THE DEITCH LAW OFFICES
800 Rio Grande
Austin, Texas 78701
512/ 474-1554
512/ 474-1579 (fax)
mike@deitchlaw.com (e-mail)

By:  */s/ Michael Deitch*
    MICHAEL DEITCH
    State Bar Number 05644550

**COUNSEL FOR 3RD TRI 2020, LTD.**



HUSCH BLACKWELL LLP

By: */s/ Lynn Hamilton Butler*
Lynn Hamilton Butler
State Bar No. 03527350
Lauren Elizabeth Hayes
State Bar No. 24081961
111 Congress Avenue, Suite 1400

Austin, Texas 78701
Tel: (512) 472-5456
Fax: (512) 479-1101
lynn.butler@huschblackwell.com
lauren.hayes@huschblackwell.com

**LOCAL COUNSEL FOR DIP LENDER**

**AKIN GUMP STRAUSS HAUER & FELD LLP**

By:*/s Brad M. Kahn*
Brad M. Kahn (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
Email: bkahn@akingump.com

Rachel Biblo Block (State Bar No. 24097382)
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Telephone: (214) 969-2800
Facsimile: (214) 969-4343
Email: rbibloblock@akingump.com

**COUNSEL FOR DIP LENDER**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

EXHIBIT 1 PURCHASE AGREEMENT

| | | |
|---|---|---|
| In Re: | § | |
| | § | **Case No. 21-10252-tmd** |
| **WC 3RD AND TRINITY, LP,** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |

**CONTRACT FOR SALE OF NON-RESIDENTIAL REAL PROPERTY**

WHEREAS, Randolph N. Osherow (the "Trustee") is the duly appointed and serving chapter 7 trustee for the bankruptcy estate (the "Bankruptcy Estate") in the above styled and numbered bankruptcy case;

WHEREAS, all rights and interests of WC 3rd and Trinity, LP (the "Debtor") with respect to that certain piece of real property commonly known as 309 E. 3rd St., Austin, Texas 78701 (the "Real Property"; more fully described in **Exhibit A** attached hereto) are included in the Bankruptcy Estate;

WHEREAS, the Trustee has sought from the United States Bankruptcy Court for the Western District of Texas (the "Bankruptcy Court") authority to sell as-is where-is the Real Property [see Motion to Sell, Dkt. No. 279];

WHEREAS, DHA Capital LLC ("Buyer") has reviewed the Motion to Sell and is aware of, among other things, the fact that there is a third-party that asserts a right of first refusal with respect to sale of the Real Property (the "Right of First Refusal");

WHEREAS, Buyer has done its own due diligence with respect to the Real Property, including ownership thereof;

WHEREAS, Buyer acknowledges that the Trustee intends to seek to sell the Real Property to the highest and best bidder subject to approval by the Bankruptcy Court;

WHEREAS, Buyer wishes to purchase from the Bankruptcy Estate its rights (as-is, where-is) in the Real Property;

WHEREAS, at a hearing held before the Bankruptcy Court on September 15, 2022, the Bankruptcy Court determined to authorize the sale of the Real Property to the Buyer subject to entry of a final order mutually agreeable to the Trustee, the Buyer and the holder of the Right of First Refusal (the "Sale Order")

NOW, THEREFORE, BIDDER offers to purchase the Bankruptcy Estate's interests in the Real Property.

# ARTICLE 1
## PURCHASE PRICE AND EARNEST MONEY

Section 1.1    <u>Agreement to Sell and Purchase.</u>

Trustee shall sell to Buyer, and Buyer shall purchase from Trustee, the Real Property, subject to the terms and conditions of this Agreement.

Section 1.2    <u>Purchase Price.</u>

The purchase price ("<u>Purchase Price</u>") of the Real Property is $<u>20,100,000</u>, payable in cash or other immediately available federal funds at Closing (defined below).

Section 1.3    <u>Deposit.</u>

**ARTICLE 2WITHIN THREE (3) BUSINESS DAYS OF AN ORDER OF THE BANKRUPTCY COURT RATIFYING THE SALE OF THE PROPERTY TO BUYER, BUYER SHALL DEPOSIT THE AMOUNT OF $50,000.00 IN IMMEDIATELY AVAILABLE FEDERAL FUNDS WITH TRUSTEE (THE "FIRST DEPOSIT").  WITHIN THREE (3) BUSINESS DAYS OF NOTICE FROM TRUSTEE THAT THE RIGHT OF FIRST REFUSAL HAS EXPIRED, BUYER SHALL DEPOSIT WITH TRUSTEE AN ADDITIONAL TWO HUNDRED THOUSAND DOLLARS ($200,000) ("SECOND DEPOSIT", AND TOGETHER WITH THE FIRST DEPOSIT, THE "DEPOSIT").  THE DEPOSIT WILL BE APPLIED IN ITS ENTIRETY TO THE PURCHASE PRICE AT CLOSING PURSUANT TO THE SALE ORDER.  IF THIS AGREEMENT DOES NOT CLOSE, THE DEPOSIT WILL BE DISBURSED IN ACCORDANCE WITH THE APPLICABLE ORDER(S) OF THE BANKRUPTCY COURT.**
**TITLE AND OTHER INFORMATION**

Section 2.1    <u>Title</u>.

Buyer acknowledges that Trustee has provided certain information, to the extent within the actual possession of Trustee, regarding the Real Property to Buyer (collectively, the "<u>Property Information</u>"), and Buyer agrees that the Trustee has not made and does not make any warranty or representation regarding the sufficiency, truth, accuracy, or completeness of the Property Information or the source(s) thereof, and that Trustee has not undertaken any independent investigation as to the sufficiency, truth, accuracy, or completeness of the Property Information and is providing the same solely as an accommodation to Buyer.  All Property Information provided by Trustee or its agents and representatives to Buyer with respect to the Real Property shall be treated as confidential information by Buyer and shall not be disclosed to any third (3rd) party except as expressly provided herein.  Buyer was provided a commitment for the issuance of an owner's policy of title insurance for the Real Property dated June 9, 2022, GF No. 202202773 (the "Title Commitment").  In the event any new matters appear in an updated or revised Title Commitment that did not appear in the version previously delivered to Buyer, except to the extent any of the same are created by, through or under Buyer or with Buyer's written consent (the "New Encumbrances"), Buyer shall have the right to terminate this Agreement and receive a refund of the Deposit.

# ARTICLE 3
## TRUSTEE'S REPRESENTATIONS, WARRANTIES, AND COVENANTS

Section 3.1    <u>Trustee's Representations and Warranties</u>.

Trustee represents and warrants to Buyer as follows, which representations and warranties are also deemed to be made on and as of the Closing Date:

(a)    Trustee, acting by and through the authority of the Bankruptcy Court, has the authority to execute this Agreement on behalf of the Bankruptcy Estate and, prior to the performance of the respective obligation, will have the authority to perform its obligations under this Agreement.

2

(b)     Except for the representations and warranties contained in this Agreement, Trustee makes no other express or implied representation or warranty, including, without limitation, representations, or warranties as to the condition of the Real Property, its contents, the income derived or potentially to be derived, or the expenses incurred or potentially to be incurred in connection with the Real Property.  Trustee is not, and will not be, liable or bound in any manner by express or implied warranties, guarantees, statements, promises, representations or information pertaining to the Real Property or this Agreement, made or furnished by any broker, agent, employee, servant, or other person representing or purporting to represent Trustee, unless and to the extent the same is expressly set forth in this Agreement.

Section 3.2     <u>No Survival of Representations and Warranties</u>.

The representations and warranties in **Section 3.1** will be deemed merged into the Deed upon Closing.

## ARTICLE 4
## BUYER'S REPRESENTATIONS, WARRANTIES, AND COVENANTS

Section 4.1     <u>Buyer's Representations and Warranties</u>.

Buyer represents and warrants to Trustee, which representations and warranties are also deemed to be made on and as of the Closing Date:

(a)     Buyer has the authority to execute this Agreement and to perform its obligations under this Agreement.  If an entity, the person executing this Agreement on behalf of Buyer is duly authorized to do so.

(b)     There are no attachments, executions, assignments for the benefit of creditors, or voluntary or involuntary proceedings in bankruptcy or under other debtor relief laws contemplated by, pending, or threatened against Buyer.

(c)     Buyer is a sophisticated user and developer of real property and is acquiring the Real Property for development purposes.  Accordingly, Trustee is and shall be under no obligation to make disclosures under applicable law regarding the Real Property, but rather, Buyer in making this Agreement has relied exclusively on its own consultants, advisors, counsel, employees, agents, principals, and/or studies, investigations, and/or inspections with respect to the Real Property, its condition, value, and potential.

## ARTICLE 5
## CLOSING AND PRORATIONS

Section 5.1     <u>Closing Date</u>. The Closing of this Agreement (the "Closing") will take place on or before October 10, 2022 (the "<u>Closing Date</u>") subject to entry of the Sale Order which establishes that the Right of First Refusal has terminated prior to the Closing Date.

Section 5.2     <u>Closing Matters</u>.

(a)     On the date of Closing, Trustee shall deliver into escrow with Closing Agent, for delivery to Buyer upon Closing:

(i)     a Special Warranty Deed (the **Deed**), duly executed and acknowledged by Trustee, substantially in the form attached to this Agreement as **<u>Exhibit B</u>** and limited as contemplated therein;

(ii)    2 counterparts of a General Assignment, with respect to the Leases, Permits, and Intangibles (the **Assignment**), duly executed by Trustee, substantially in the form attached to this Agreement as **<u>Exhibit C</u>**.

3

        (iii)     any other document reasonably required by the Bankruptcy Court to consummate the transactions contemplated herein; and

        (iv)     possession of the Real Property, subject to the Permitted Exceptions and any other matters authorized herein.

    (b)    At the Closing, Buyer shall deliver into escrow with Closing Agent, for delivery to Trustee upon Closing:

        (i)     by wire transfer or other immediately available federal funds, the cash portion of the Purchase Price;

        (ii)     2 counterparts of the Assignment, duly executed by Buyer; and

        (iii)     any other document reasonably required by the Bankruptcy Court or the Trustee to consummate the transactions contemplated herein.

**Section 5.3**    <u>Prorations.</u>

    (a)    At Closing, *ad valorem* taxes and assessments or other income and expenses attributable to the Real Property will be prorated as of the Closing Date.  Trustee shall pay from the proceeds of this Agreement at Closing the claim of Travis County, Texas, for unpaid pre-petition *ad valorem* taxes.

    (b)    The obligations of the Trustee and Buyer under this **Section 5.3** survive the Closing.

**Section 5.4**    <u>Closing Costs</u>.

Any and all costs, fees, and expenses attributable to the Closing hereunder incurred by Buyer shall be paid by Buyer; provided, however, that Trustee shall pay the cost of the Buyer's title insurance policy (but excluding the cost of any lender endorsement).

# ARTICLE 6
# TERMINATION AND REMEDIES

**Section 6.1**    <u>Termination Prior to Closing</u>.

Buyer expressly acknowledges and agrees that on the Effective Date of this Agreement, Buyer shall have no right whatsoever to terminate this Agreement, except only in the event that Buyer is not deemed to be the successful bidder or a back-up bidder upon entry of the Sale Order.

Notwithstanding the above, Buyer may terminate this Agreement and receive back the full amount of the Deposit in the event that Trustee is unable to close title pursuant to the terms of this Agreement within one hundred twenty (120) days following the Effective Date.

In the event of any termination of this Agreement, this Agreement shall forthwith become wholly void and of no further force and effect, and there shall be no liability on the part of Buyer or the Trustee.  Buyer waives the right to claim, seek, or recover special, consequential, punitive, or any other damages other than actual damages in connection with this transaction and this Agreement.  The provisions of this **Section 6.1** survive the Closing or any termination of this Agreement.

**Section 6.2**    <u>Trustee's Remedies</u>.

If Buyer is selected to be the successful bidder or back-up bidder pursuant to the Sale Order and fails to close on the Closing Date for any reason other than Trustee's failure to deliver the items required by **Section 5.2(a)**, then Trustee may, as its sole and exclusive remedy, terminate this Agreement by giving notice to Buyer of such termination, and upon such termination the Deposit shall be deemed forfeited and released to Bankruptcy Estate.

3586174.v1

**ARTICLE 7**
**MISCELLANEOUS**

Section 7.1    <u>Notices</u>.

All notices, requests, approvals, consents, and other communications required or permitted under this Agreement (**Notices**) must be in writing and are effective:

(a)    on the business day sent if (i) sent by e-mail prior to 6:00 p.m. prevailing Central time, and (ii) (A) the sender receives evidence of sending, via copy in its "sent" file or other similar electronic storage, and (B) a confirming copy of such Notice is deposited no later than the same business day with an overnight courier in the manner specified in clause (b) below;

(b)    on the date of deposit, if deposited on a business day, with a nationally recognized overnight courier service for prepaid delivery on the next business day; or

(c)    3 business days after being deposited on a business day in the United States mail, certified, return receipt requested, postage prepaid.

in each instance addressed to Buyer or Trustee, as the case may be, at the following addresses:

Trustee:            Randolph N. Osherow, Chapter 7 Trustee
                    342 West Woodlawn, Suite 100
                    San Antonio, Texas 78212
                    Tel:        (210) 738-3001
                    Email:      rosherow@hotmail.com

                    With a copy to:

                    Brian Cumings
                    Graves Dougherty Hearon & Moody, PC
                    401 Congress Ave., Suite 2700
                    Austin, Texas 78701
                    Tel:        (512) 480.5620
                    Email:      bcumings@gdhm.com

Buyer:              DHA Capital LLC
                    8700 Calera Drive
                    Austin TX  78735
                    Attention:  Daniel Hollander
                    Tel:        646-528-8668
                    Email:      dan@dhacap.com

                    With a copy to:

                    Winstead PC
                    401 Congress Ave., Suite 2100
                    Austin, Texas 78701
                    Attention:  Kristi Stotts
                    Tel:        512-370-2877
                    Email:      kstotts@winstead.com

Either party may change its addresses or numbers for notice hereunder, by providing the other party with at least 7 days' prior notice of such change in accordance with this provision.  Legal counsel of Buyer or Trustee, as applicable, may deliver Notice on behalf of the respective party.

3586174.v1

Section 7.2        Assignment.

This Agreement may not be assigned by Buyer without the prior consent of Trustee except to an entity controlled by, or under common control with Buyer or Buyer's sole principal, or in which Buyer retains an ownership interest.

Section 7.3        Disclaimers, Waivers, and Releases.

Buyer acknowledges and agrees that:

(a) BUYER IS PURCHASING THE REAL PROPERTY AS IS, WHERE IS, AND WITH ALL FAULTS, AND BUYER RELEASES TRUSTEE AND THE BANKRUPTCY ESTATE AND ALL OF TRUSTEE'S AFFILIATES AND THEIR EMPLOYEES, OFFICERS, DIRECTORS, REPRESENTATIVES, AND AGENTS FOR ANY COST, LOSS, LIABILITY, DAMAGE, EXPENSE, DEMAND, ACTION, OR CAUSE OF ACTION ARISING FROM OR RELATED TO ANY CONSTRUCTION OR DESIGN DEFECTS, ERRORS, OMISSIONS, OR OTHER CONDITIONS AFFECTING THE REAL PROPERTY, KNOWN OR UNKNOWN. THIS RELEASE WILL BE GIVEN FULL FORCE AND EFFECT ACCORDING TO EACH OF ITS EXPRESS TERMS AND PROVISIONS, INCLUDING, WITHOUT LIMITATION, THOSE RELATING TO UNKNOWN CLAIMS, DAMAGES, AND CAUSES OF ACTION. THIS COVENANT RELEASING TRUSTEE AND ALL TRUSTEE AFFILIATES IS A COVENANT RUNNING WITH THE REAL PROPERTY AND IS BINDING UPON BUYER, ITS SUCCESSORS AND ASSIGNS.

(b) TRUSTEE SPECIFICALLY DISCLAIMS, AND BUYER EXPRESSLY WAIVES, ANY WARRANTY, GUARANTY, OR REPRESENTATION, ORAL OR WRITTEN, PAST, PRESENT, OR FUTURE, OF, AS, TO, OR CONCERNING ALL OR ANY PORTION OF THE REAL PROPERTY OR THE OWNERSHIP OR OPERATION THEREOF, INCLUDING (WITHOUT LIMITATION): (I) THE NATURE AND CONDITION OF THE REAL PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER (INCLUDING BUT NOT LIMITED TO, DRINKING WATER, GROUNDWATER, SURFACE WATER, WETLANDS), SOIL, AND GEOLOGY, AND THE SUITABILITY OF THE REAL PROPERTY AND IMPROVEMENTS FOR ANY AND ALL ACTIVITIES AND USES THAT BUYER MAY ELECT TO CONDUCT THEREON; (II) MATTERS OF TITLE; (III) LEGAL COMPLIANCE OF THE REAL PROPERTY AND IMPROVEMENTS OR THE OPERATION THEREOF, INCLUDING, WITHOUT LIMITATION, THE AMERICANS WITH DISABILITIES ACT AND THE FAIR HOUSING ACT, AS AMENDED FROM TIME TO TIME; (IV) WHETHER THE IMPROVEMENTS ARE BUILT IN A GOOD AND WORKMANLIKE MANNER; (V) ZONING MATTERS; (VI) WARRANTIES (EXPRESS OR IMPLIED) OF CONDITION REGARDING THE FITNESS OF THE REAL PROPERTY AND IMPROVEMENTS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, TENANTABILITY, HABITABILITY, OR SUITABILITY FOR ANY INTENDED USE; AND (VII) ANY ENVIRONMENTAL CONDITIONS (COLLECTIVELY, THE "HAZARDOUS WASTE LAWS"), AND BUYER RELEASES AND WAIVES ANY CLAIMS OR CAUSES OF ACTION AGAINST TRUSTEE, TRUSTEE'S AGENTS, AND TRUSTEE'S AFFILIATES BASED IN WHOLE OR IN PART ON ANY VIOLATION OF OR ARISING OUT OF THE HAZARDOUS WASTE LAWS, OR A VIOLATION OF OR ARISING OUT OF ANY FEDERAL, STATE, OR LOCAL STATUTE, ORDINANCE, RULE, OR REGULATION RELATING TO THE HAZARDOUS WASTE LAWS.

(c) BUYER SHALL PERFORM ALL INVESTIGATIONS OF THE REAL PROPERTY IT DEEMS NECESSARY PRIOR TO CLOSING. BUYER REPRESENTS AND WARRANTS TO TRUSTEE THAT BUYER IS RELYING SOLELY ON BUYER'S INDEPENDENT ANALYSIS AND INVESTIGATION OF THE REAL PROPERTY AND BUYER ASSUMES THE RISK THAT AN ADVERSE CONDITION OF THE REAL PROPERTY MAY NOT HAVE BEEN REVEALED BY ITS OWN DUE DILIGENCE. ANY INFORMATION, PROPERTY INFORMATION, OR REPORTS SUPPLIED OR MADE AVAILABLE BY THE TRUSTEE, WHETHER WRITTEN OR ORAL, OR IN THE FORM OF MAPS, SURVEYS, PLATS, SOIL REPORTS, ENGINEERING STUDIES, ENVIRONMENTAL STUDIES, OPERATION STATEMENTS, RENT ROLLS, OR OTHER INSPECTION REPORTS PERTAINING TO THE REAL PROPERTY (COLLECTIVELY "SELLER INFORMATION") ARE BEING DELIVERED TO BUYER ON AN AS-IS, WHERE IS, AND WITH ALL FAULTS BASIS, SOLELY AS A COURTESY. TRUSTEE MAKES NO, AND BUYER WAIVES ANY, REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, OR ARISING BY OPERATION OF LAW AS TO THE ACCURACY, COMPLETENESS, OR ANY OTHER ASPECT OF THE SELLER INFORMATION.

**[Signature page follows.]**

6

3586174.v1

**SIGNED** by Trustee, in its capacity as Chapter 7 Trustee for the Bankruptcy Estate at _____, on the _____ day of _____, 2022, in the physical presence of me, Notary Public, and the following competent witnesses.

**Witnesses:**

Trustee
(in its capacity as Chapter 7 Trustee)

_____      By: _____

_____           _____

Typed/Printed Name of Witness            Its: _____


_____

_____

Typed/Printed Name of Witness


_____
          Print Name _____
          Notary Public for _____
          Notary or Bar Id. No. _____
          Commission Expires _____

7

**SIGNED** by _____ at _____, on the _____ day of _____, 2022, in the physical presence of me, Notary Public, and the following competent witnesses.

**Witnesses:**                                                  _____

_____      By: _____
                                                                        _____
_____      Its: _____
Typed/Printed Name of Witness


_____

_____
Typed/Printed Name of Witness


_____
          Print Name _____
          Notary Public for _____
          Notary or Bar Id. No. _____
          Commission Expires _____

3586174.v1

The undersigned acknowledges receipt of a copy of this Agreement, fully-executed by Buyer and Trustee, and shall comply with the terms of this Agreement that relate to Closing Agent.

_____

By: _____

Name: _____

Title: _____

_____, 2022.

3586174.v1

EXHIBIT A

LEGAL DESCRIPTION OF REAL PROPERTY

Lots 7, 8 and 9, Block 16, of the Original City of Austin, in Travis County, Texas, according to the map or plat of the Original City filed in the General Land Office of the State of Texas.

3586174.v1

EXHIBIT B

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

**SPECIAL WARRANTY DEED**

STATE OF TEXAS      §
            §
COUNTY OF _____    §

This Special Warranty Deed (this **Deed**) is made as of _____, _____, by _____, a _____ (**Grantor**) to _____, a _____ (**Grantee**).

Grantor, for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other valuable consideration to Grantor paid by Grantee, the receipt and sufficiency of which consideration are hereby acknowledged, has GRANTED, SOLD, AND CONVEYED, and by these presents does GRANT, SELL, AND CONVEY unto Grantee, subject to the Permitted Exceptions (defined below), all of the real property more particularly described on **Exhibit A** attached hereto and made a part hereof for all purposes (the **Property**), together with the improvements thereon and all of Grantor's rights to appurtenances, easements, adjacent streets and alleys, strips, and gores.

TO HAVE AND TO HOLD the Property, subject to the Permitted Exceptions, together with all and singular the rights and appurtenances thereto in anywise belonging, to Grantee, its successors, and assigns, forever; and Grantor binds itself, its successors, and assigns, to WARRANT AND FOREVER DEFEND all and singular the Property to Grantee, its successors, and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof, by, through, or under Grantor, but not otherwise.

This Deed is made, and is accepted by Grantee, subject to the above reservation of oil, gas, and other minerals; and (a) all easements, restrictions, covenants, agreements, encumbrances, and other matters that are either of record or are otherwise disclosed by any such matters of record, to the extent the same are validly existing and applicable to the Property; (b) all matters that would be disclosed by a current and accurate ALTA/ACSM Land Title survey of the Property, prepared and certified on or about the date of this Deed; and (c) all other matters otherwise disclosed on **Exhibit B** attached hereto and made a part hereof for all purposes (collectively, the **Permitted Exceptions**).

Grantee, by accepting delivery of this Deed, hereby assumes responsibility for payment of the taxes and assessments for the current and subsequent years. Grantee's acceptance of delivery of this Deed is evidenced by its recordation.

**[Signature page follows]**

11

3586174.v1

EXECUTED to be effective as of the date first written above.

**GRANTOR:**

_____

a _____

By: _____
Name: _____
Title: _____

STATE OF_____        §
                                §
COUNTY OF _____        §

This    instrument    was    acknowledged    before    me    on    _____,    _____,    by
_____,    _____    of    _____,    a
_____, on behalf of the _____ .

_____

NOTARY PUBLIC, STATE OF _____

_____

[Stamped Notary Seal]

**GRANTEE'S ADDRESS:**

_____
_____
_____

12

3586174.v1

**EXHIBIT C**

**GENERAL ASSIGNMENT AND BILL OF SALE**

This General Assignment and Bill of Sale (this **Assignment**) is made as of _____, _____, by _____, a _____ (**Grantor**), and _____, a _____ (**Grantee**).

**ASSIGNMENT**

For and in consideration of the sum of Ten and No/100 Dollars ($10.00) cash and other good and valuable consideration to Grantor paid by Grantee, the receipt and sufficiency of which are acknowledged, Grantor and Grantee agree as follows:

1.    Assignment.

Grantor ASSIGNS, TRANSFERS, GRANTS, SELLS, and CONVEYS to Grantee all of Grantor's right, title, and interest, if any, and in each case to the extent assignable without consent or cost to Seller, in the following described properties, rights, and estates (the **Property**) to the extent pertaining to the real property (the **Real Property**) described on **Exhibit A** attached to this Assignment:

   (a)     the Leases; and

   (b)     the Permits; and

   (c)     the Intangibles; and

   (d)     all insurance proceeds otherwise payable to Seller as a result of fire or other casualty.

The Property is sold and conveyed, without recourse of any nature as to Grantor, and, **AS IS, WHERE IS, AND WITHOUT ANY WARRANTIES OF WHATSOEVER NATURE, EXPRESS OR IMPLIED, IT BEING THE INTENTION OF GRANTOR AND GRANTEE EXPRESSLY TO NEGATE AND EXCLUDE ALL WARRANTIES, INCLUDING, WITHOUT LIMITATION, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR ANY PARTICULAR PURPOSE, WARRANTIES CREATED BY ANY AFFIRMATION OF FACT OR PROMISE OR BY ANY DESCRIPTION OF THE PROPERTY CONVEYED HEREUNDER, OR BY ANY SAMPLE OR MODEL THEREOF, AND ALL OTHER WARRANTIES WHATSOEVER CONTAINED IN OR CREATED BY THE TEXAS UNIFORM COMMERCIAL CODE.**

2.    Assumption.

Grantee assumes and agrees to perform all terms, covenants, conditions, and obligations of the Leases, and otherwise with respect to the Property, to the extent arising or accruing on or after the date of this Assignment.  Grantee agrees to indemnify and hold harmless Grantor from any cost, liability, damage, or expense (including reasonable attorneys' fees) arising out of or relating to Grantee's failure to perform any of the foregoing obligations.

3.    Counterparts.

This Assignment may be executed in multiple counterparts, each of which shall be considered an original but constitute one and the same instrument when more than one of such counterparts are taken together.   Proof of this Assignment does not require the presentment of all such counterparts, as long as the execution of each of Grantor and Grantee is evidenced on at least one of the counterparts so presented.

**[SIGNATURE PAGE FOLLOWS]**

13

3586174.v1

DATED EFFECTIVE as of the first date above written.

**GRANTOR:**

_____,
a _____

By: _____
Name: _____
Title: _____

**GRANTEE:**

_____,
a _____

By: _____
Name:_____
Title: _____

14

3586174.v1